894 F.2d 1300
 DELANEY'S INC., Delaney Investments, Inc., Forest Lawn
Memorial Gardens, Inc., Springdale Plaza, Inc.,
Springdale Stores, Inc., et al.,
Plaintiffs-Appellants,
v.
ILLINOIS UNION INSURANCE CO., Montgomery & Collins, Inc. of
Texas, Defendants-Appellees.
 No. 89-7032.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 20, 1990.
 
 Joseph M. Brown, Jr., Andrew T. Citrin, Cunningham, Bounds, Yance, Crowder and Brown, Mobile, Ala., for plaintiffs-appellants.
 Wesley Pipes, Charles L. Miller, Jr., Mobile, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before KRAVITCH, Circuit Judge, HILL*, Senior Circuit Judge, and FREEMAN**, District Judge.
 HILL, Senior Circuit Judge:
 
 I. INTRODUCTION
 
 1
 In this case, plaintiff-appellants asserted several causes of action against the defendant-appellees arising from the latters' sale, issuance, and performance under a contract of insurance. The case was submitted to a jury in the form of interrogatories which in turn comprised a special verdict that the district judge used in formulating the judgment. As Judge John R. Brown of the Fifth Circuit Court of Appeals has often stated, when used correctly a special verdict can be a "Doubt Eliminator." See generally, Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338. On the other hand, jury interrogatories and special verdicts " 'emphasize the absolute necessity that there be first a clear understanding of the precise legal issues for jury resolution ...' " Id. at 351, quoting R.B. Co. v. Aetna Ins. Co., 299 F.2d 753, 756 (5th Cir.1962). " '[T]he Judge is forced to think, and think hard.' With the help of counsel, he must begin 'by anticipating all of the likely, probable answers and then testing these several likely results against the possible existence of conflict.' " Guidry v. Kem Mfg. Co., 598 F.2d 402, 407 (5th Cir.1979), quoting Brown, supra at 351.
 
 
 2
 One of the most troublesome ambiguities present in general verdicts is whether the remedies granted by the jury overlap and whether "there has been a purposeful or inadvertent duplication." Brown, supra at 346. This case illustrates that when the possible answers in a special verdict are not fully anticipated and probed for consistency, the great "Doubt Eliminator" can become the "Doubt Originator." The jury in this case answered two separate interrogatories such that defendant-appellee Illinois Union Insurance Company ("Illinois Union") was assessed punitive damages for misrepresentation and for participating in a conspiracy to defraud the plaintiff. The phrasing of the jury questions presupposed without apparent consideration by the court or the parties that Illinois Union could be guilty of two distinct wrongs. This ambiguity planted the seed of confusion that has haunted this case from that day forward.
 
 
 3
 After the jury returned its answers in such a form that the possibility of two punitive damage awards against Illinois Union became a reality, the jury was dismissed and the parties were later required to brief and argue the question of whether the verdict comprised an unconstitutional double penalty for the same wrong, or merely two separate penalties for two distinct wrongs. The district court unequivocally rejected the "two wrongs" theory but left at least a glimmer of doubt as to exactly how the remaining award should be interpreted. Confusion spawned confusion.
 
 
 4
 Defendants appealed the judgment on several grounds and sought to take advantage of the possible ambiguity in the wording of the final judgment. Not to be outdone, plaintiffs attempted to bend the confusion to their own favor without cross-appealing the district court's rejection of the "two wrongs" theory. Confusion was put to myriad uses.
 
 
 5
 After this court affirmed the judgment of the district court without an opinion, defendants paid a sum of money to the district court for the plaintiffs in satisfaction of the judgment, at least as they interpreted the amount of punitive damages awarded in the judgment. Plaintiffs claimed they were entitled to more. Confusion came to a head. Or so it seemed.
 
 
 6
 Both parties went to the district court for clarification. The district court agreed with the defendants' interpretation of the judgment and the plaintiffs claim that the district court changed the judgment after it had already been affirmed by this court. Confusion lives on. This appeal of the district court's clarification order followed.
 
 
 7
 In the immortal words of the chain gang boss in the movie "Cool Hand Luke," "What we have here is a failure to communicate."
 
 
 8
 We have but one question to "communicate" and answer in this appeal: Did the payment by the defendants of $350,000.00 in punitive damages carry out the jury's verdict in this case, as interpreted by the district court in its judgment entered on July 10, 1987, and affirmed by this court under our Rule 36-1 on September 13, 1989? We find that defendant Illinois Union should have paid $275,000.00 in punitive damages to the plaintiffs, while defendant Montgomery & Collins Incorporated should have paid $175,000.00, for a total of $450,000.00 in punitive damages.
 
 
 9
 A brief review of the facts is in order. In August, 1984, the plaintiff-appellants, whom we shall refer to collectively as "the Delaneys," were approached by an insurance broker who proposed to secure commercial property insurance for the approximately forty-eight different properties which the Delaneys owned and managed as part of their business. At that time, the Delaneys had insurance coverage with deductible provisions of $2,500.00 or $25,000.00, depending upon the nature of the loss, for each occurrence of a covered loss. They sought to maintain the same insurance coverage, with identical "per occurrence" deductible provisions.
 
 
 10
 The Delaneys' insurance agent sought to obtain a premium quote for such coverage through defendant Montgomery & Collins Incorporated, an insurance brokerage firm in Houston, Texas ("Montgomery & Collins"). Montgomery & Collins in turn sought to place the actual insurance coverage with defendant Illinois Union. Testimony at trial indicated, and the jury effectively found, that both defendants understood that the Delaneys sought insurance coverage with the "per occurrence" of loss deductible provisions described above.
 
 
 11
 In November, 1984, Montgomery & Collins quoted the Delaneys' agent the premium at which such coverage could be obtained through Illinois Union. The Delaneys later accepted this offer. The insurance contract became effective on December 12, 1984, through the issuance of a binder by Montgomery & Collins. The policy itself was to be issued by Illinois Union within the 30-day period for which the binder was effective. On January 12, 1985, the binder was extended, however, for an additional 30 days. Illinois Union had not yet issued the policy.
 
 
 12
 On January 20, 1985, the Delaneys suffered damage to a number of their properties due to the effect of a hard freeze. Shortly after the Delaneys notified Illinois Union of this loss, a dispute arose between the Delaneys and Illinois Union regarding whether the deductible provisions of the coverage that the parties had agreed upon applied to each "occurrence" of a loss, or whether the deductible applied separately to each of the properties damaged.
 
 
 13
 Meanwhile, on January 31, 1985, Illinois Union issued the actual insurance policy and the Delaneys, through their insurance agent, contacted both Montgomery & Collins and Illinois Union to reiterate that the terms of the policy agreed upon between the parties provided for a deductible on a "per occurrence," rather than a "per property," basis. Since the Delaneys had insured 48 different properties, and many of them had been damaged by the freeze, the application of a "per property" deductible would require the Delaneys to absorb or self-insure a great deal more of the loss than if a "per occurrence" deductible were applied in determining their coverage for the freeze loss.
 
 
 14
 On February 27, 1985, Illinois Union issued an "Endorsement" or "Change" to the policy. It was established at trial that this "Change," which had a retroactive effective date of December 12, 1984 (the date the insurance contract became effective), was added for the purpose of modifying the deductible provisions to apply on a "per property" rather than a "per occurrence," basis.
 
 
 15
 Throughout the spring of 1985, the Delaneys and their insurance agent sent letters and made phone calls to Montgomery & Collins and Illinois Union outlining their position that the deductible provisions applied on a "per occurrence" basis. During this time, several letters, phone calls, and at least one memo were exchanged between brokers at Montgomery & Collins and their contacts at Illinois Union. Documents and testimony introduced at trial indicated that Illinois Union and Montgomery & Collins may have purged their files with regard to the negotiations leading up to the issuance of coverage for the Delaneys. These files purportedly supported the Delaneys' position that they had bargained for a "per occurrence" deductible. Testimony also indicated that brokers at Montgomery & Collins told Illinois Union in the Spring of 1985 that the Delaneys had bargained for insurance coverage containing a "per occurrence" deductible.
 
 
 16
 On September 2, 1985, a number of the Delaneys' properties were damaged by Hurricane Elena. Illinois Union again applied a "per property" deductible to those losses.
 
 
 17
 The Delaneys later brought this suit against both Montgomery & Collins and Illinois Union, asserting causes of action for, inter alia, breach of contract, fraud in the issuance of the policy, and conspiracy to defraud the plaintiffs of benefits due under the insurance policy. Under Rule 49(a) of the Federal Rules of Civil Procedure, the case was submitted to the jury with special interrogatories on February 17, 1987. The jury found that Illinois Union had indeed promised to provide insurance coverage with a "per occurrence" deductible for both the hurricane and freeze losses.
 
 
 18
 The actual damages resulting from the payment of additional deductibles on the freeze loss was pre-determined by agreement between the parties to be $18,250.06, plus interest, while the damages resulting from the additional deductibles on the hurricane loss was predetermined to be $125,736.61, plus interest.
 
 
 19
 The jury also found by special interrogatory that Illinois Union, acting through Montgomery & Collins, made either a willful or reckless misrepresentation of a material fact. The jury assessed $275,000.00 in punitive damages against Illinois Union for this misrepresentation. Finally, the jury found that Illinois Union and Montgomery & Collins had conspired to defraud the plaintiffs. The jury assessed $350,000.00 in punitive damages jointly against both parties for the conspiracy.
 
 
 20
 Pursuant to Federal Rule of Civil Procedure 49(a), the district court was required to fashion its judgment according to the jury's answers to the interrogatories in the special verdict. Immediately after the answers were returned, however, the district judge expressed concern over whether assessing $275,000.00 in punitive damages against Illinois Union and $350,000.00 against both Illinois Union and Montgomery & Collins would unconstitutionally penalize Illinois Union twice for the same wrong. Nonetheless, the judge accepted the special verdict and allowed the parties to brief the issue. The defendants responded by filing a motion to alter the verdict. The brief and arguments were directed to that motion.
 
 
 21
 On July 7, 1987, after a hearing was held on the matter, the district court granted the defendants' motion to alter the verdict and held that "the $275,000.00 [assessed in] Interrogatory No. 4 and $350,000.00 punitive damages assessed in Interrogatory No. 5 may not be added together against the defendant Illinois Union Insurance Company." On July 10, 1987, the district court entered its formal judgment in accordance with its July 7th order and held that "in no event can punitive damages be collected from Illinois Union Insurance Company in excess of $275,000.00 as assessed for the same wrong as set out [in the interrogatory under which the jury assessed a $350,000.00 penalty for the conspiracy]."
 
 
 22
 On August 31, 1987, defendants filed a notice of appeal to this court, asserting as one of its grounds for appeal that the district court's final judgment awarded double punitive damages against Illinois Union. On September 13, 1988, this court affirmed the judgment of the district court without opinion under our Rule 36-1.
 
 
 23
 Shortly thereafter, defendants paid an amount of money into the district court which, for the purposes of this appeal, constituted $350,000.00 in punitive damages. On October 17, 1988, plaintiffs filed a motion in this court for a more specific mandate, which defendants opposed. On November 16, 1988, the parties filed in the district court a joint motion for clarification of the judgment. On December 22, 1988, after a hearing, the district court ruled that the payment by the defendants of $350,000.00 in punitive damages was the correct and "maximum amount which may be imposed [under the judgment]." The district court ordered that the money paid into the court should be given to the plaintiffs and the judgment marked "paid and satisfied in full."
 
 
 24
 On January 3, 1989, the plaintiffs filed this appeal from the district court's order marking the judgment paid in full. On January 25, 1989, apparently without knowledge of the district court's order or that any proceedings had occurred in the district court, this court denied the motion for a more specific mandate and stated: "Appellees are free to seek the aid of the District Court in enforcing the judgment."
 
 II. DISCUSSION
 
 25
 More unproductive time has been spent and more trees have given their life in the effort to bring this case to a dignified close than should have been necessary. Consistent with this state of affairs, we will require scarcely as many pages to address the merits of this case than were necessary merely to outline its tortured procedural history.
 
 
 26
 A. Appellate Jurisdiction Over "Final Judgments"
 
 
 27
 First, we reject appellee's contention that we do not have jurisdiction to hear this appeal because it is not predicated upon a "final judgment" as required by 28 U.S.C. Sec. 1291. As appellee recognizes, it is well settled that "[a] judgment or order is final for the purposes of appealability when it ends the litigation on the merits and comprehends only execution of the court's decree." Dunlop v. Ledet's Foodliner of Larose, Inc., 509 F.2d 1387, 1389 (5th Cir.1975), citing Johnson v. Combs, 471 F.2d 84 (5th Cir.1972), cert. denied, 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973). See Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) ("A final judgment is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness, for giving effect to the judgment and leaves nothing to be done in the cause save superintend, ministerially, the execution of the decree.") It is beyond dispute that the district court's clarification order "le[ft] nothing to be done in the cause save ... the execution of the decree." Id. at 233, 65 S.Ct. at 633.
 
 
 28
 Appellees instead assert that (1) the July 10, 1987 judgment of the district court was the "final judgment" entered in this case; (2) the mandate issued by this court affirming the district court's July 10, 1987 judgment divested this court of jurisdiction in the case, and (3) if the appellants are dissatisfied with the district court's clarification order, they should seek review through an attachment or execution action.
 
 
 29
 Appellee misapprehends the jurisdictional aspects of the various actions taken in this case. In our increasingly litigious society,
 
 
 30
 ... a final judgment does not always end the lawsuit. Decisions may be necessary after an appeal has been taken.... The final judgment rule does not preclude review of such decisions. They are themselves subject to the test of finality, but an appeal can ultimately be taken from them.
 
 
 31
 If a post-judgment order is apparently the last order to be entered in the action, it is final and appealable.
 
 
 32
 9 J. Lucas, J. Moore & J. Ward, Moore's Federal Practice p 110.14, at 196-97 (2d ed. 1988). This general rule is applicable whether the post-judgment order in question is rendered before or even after the appellate mandate has been rendered. "Like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events." Standard Oil Co. of California v. United States, 429 U.S. 17, 18, 97 S.Ct. 31, 32, 50 L.Ed.2d 21 (1976).
 
 
 33
 In this case, the joint motion before the district court for a clarification as to the precise amount of damages awarded in the July 20, 1987 judgment is in the nature of a Rule 60(b)(5) motion. Fed.R.Civ.P. 60(b)(5). Under Rule 60(b)(5), a district court may relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged...." The motion for clarification in essence sought to determine whether or not the defendants had satisfied the judgment by paying $350,000 in punitive damages.[1] The district court agreed that $350,000 was the amount of punitive damages assessed in the judgment and ruled that the payment of that amount "satisfied" the judgment. See Freschi v. Grand Coal Venture, 103 F.R.D. 606 (S.D.N.Y.1984) (discussing the use of Rule 60(b) to appeal proposed remittitur of damages). Since an order granting relief under Rule 60(b) is appealable if it finally settles the matter in litigation, the district court's order to the effect that the judgment in this case should be marked "paid in full" is appealable to this court.[2]
 
 
 34
 B. Interpreting the Jury Verdict as Modified by the District Court
 
 
 35
 Turning to the merits, we find that, while the district court's judgment could conceivably have been written more clearly, it admits of only one interpretation.
 
 
 36
 First, it is clear that the district court decided the issue of whether the plaintiffs could be awarded both $275,000.00 in punitive damages from Illinois Union and $350,000.00 from Illinois Union and Montgomery & Collins together. Almost immediately after the jury returned its answers to the interrogatories, the issue arose. Both parties agreed that punitive damages could not be imposed twice for the same wrong, but the plaintiffs asserted that the separate punitive damages awards redressed two distinct wrongs and therefore were properly assessed. According to appellant-plaintiffs, the jury awarded the $275,000.00 for a wrong done by Illinois Union before the issuance of the policy, while it awarded the $350,000.00 against both Illinois Union and Montgomery & Collins for a conspiracy to do wrong arising after the policy was issued.
 
 
 37
 The district court rejected this argument in its July 7, 1987 order, stating that it was "clear that the court did not submit to the jury a [conspiracy] claim based solely on acts and facts after the issuance of the policy, but included the fraud for which the damages were assessed in Interrogatory No. 4 [i.e., the interrogatory under which Illinois Union was assessed $275,000.00 in punitive damages for a fraud occurring before the policy was issued]." (Emphasis by the district court.) According to the district court, the jury reached its decision on the conspiracy count on the basis of evidence of wrongdoing which occurred both before and after the issuance of the policy. The court granted defendants' motion to alter the verdict on the basis of its finding that the jury did not assess punitive damages for two separate wrongs.[3]
 
 
 38
 Three days later, on July 10, 1987, the district court entered its formal judgment in the case. The court incorporated its July 7th order altering the verdict and reiterated that plaintiffs could not collect both the $275,000.00 assessed against Illinois Union and Illinois Union's pro rata share of the $350,000.00 award of punitive damages for the conspiracy:
 
 
 39
 [P]unitive damages are assessed in the amount of $350,000.00 against the defendants Illinois Union Insurance Company, and Montgomery & Collins, Inc. of Texas. However, in no event can punitive damages be collected from Illinois Union Insurance Company in excess of $275,000.00 as assessed for the same wrong as set out above, which was included and assessed pursuant to the jury's answer to Interrogatory No. 4, and Montgomery & Collins, Inc. of Texas' pro rata liability for punitive damages is $175,000.00.
 
 
 40
 When read in light of the July 7th order granting the motion to alter the verdict, it is beyond cavil that the district court rejected the "two wrongs" theory and modified the jury's verdict so that the plaintiffs could not collect $625,000.00 (i.e., $275,000.00 plus $350,000.00) in punitive damages.
 
 
 41
 Plaintiffs did not cross-appeal the district court's modification of the verdict after it rejected plaintiffs' "two wrongs" theory. We therefore have no occasion to consider whether the original award of $625,000.00 would or would not have been an unconstitutional double penalty.[4] As we stated at the outset, we need only consider whether the judgment of the district court, as affirmed by this court, awarded punitive damages of $350,000.00, or whether the judgment awarded more and the district court impermissibly changed the judgment through its clarification order.
 
 
 42
 It is clear that the judgment rejected the $625,000.00 interpretation of the verdict as unconstitutional. It is equally clear, however, that the district court did not eliminate the $275,000.00 assessment against Illinois Union when it found that Illinois Union could not be assessed with both the $275,000.00 penalty and its pro rata portion of the $350,000.00 penalty. The court stated that "judgment for punitive damages is entered in the amount of $275,000.00 ... against the defendant Illinois Union Insurance Company." The court also stated that "punitive damages are assessed in the amount of $350,000.00 against the defendants Illinois Union Insurance Company and Montgomery & Collins, Inc. of Texas. However, in no event can punitive damages be collected from Illinois Union Insurance Company in excess of $275,000.00...." Finally, the court assessed Montgomery & Collins' pro-rata share of the $350,000.00 award at $175,000.00. The plain meaning of these statements is that the plaintiffs should receive $275,000.00 from Illinois Union for its wrongdoing, and $175,000.00 from Montgomery & Collins for its wrongdoing, for a total of $450,000.00 in punitive damages. This interpretation is further supported by evidence at trial which established that Illinois Union's role in the wrongdoing was more active and substantial than that of Montgomery & Collins.
 
 
 43
 In the first appeal of this case, we upheld the judgment of the district court as it existed on July 10, 1987. As we have concluded in this appeal, that judgment awarded $450,000.00 in punitive damages to the plaintiffs. That decision is binding in all subsequent proceedings regarding this case. Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1510 (11th Cir.1987). The district court cannot, as it has by its clarification order, modify its earlier judgment, which was passed upon by this court. Id.
 
 CONCLUSION
 
 44
 The district court erroneously found the payment of $350,000.00 to be the maximum and proper amount payable by the defendants under the judgment. We reverse that decision and hold that the defendants should have paid a total of $450,000.00 in punitive damages in satisfaction of the judgment. The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings in conformity with our decision.
 
 
 
 *
 See Rule 34-2(b), rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Richard C. Freeman, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 The appellee-defendants actually paid more than $350,000 in satisfaction of the judgment, but only the amount of punitive damages awarded in the judgment is subject to dispute
 
 
 [2]
 A contrary interpretation would either (1) render virtually unreviewable a post-appeal "clarification" or similar order by a district court; or (2) would, more likely, lead to unnecessarily wasteful further litigation that would ultimately result in a review by this court via a different procedural route
 
 
 [3]
 In order to afford the reader a contextual appreciation of the selectively quoted excerpts in the text above, we quote in full the relevant portion of the district court's July 7, 1987, order:
 It is clear that the court did not submit to the jury a [conspiracy] claim based solely on acts and facts after the issuance of the policy, but included the fraud for which damages were assessed in Interrogatory No. 4 [the substantive claim against Illinois Union alone]. Therefore, the punitive damages are not cumulative, i.e., added to each other in determining the liability of Illinois Union Ins. Co.
 There is no cumulative feature to the fraud liability of Montgomery & Collins, who were not assessed with damages under Interrogatory No. 4.
 Therefore, the defendants' motion to alter the jury verdict is GRANTED insofar as the $275,000.00 in Interrogatory No. 4 and $350,000.00 punitive damages assessed in Interrogatory No. 5 may not be added together against the defendant Illinois Union Ins. Co.; however, there are no cumulative damages as to the defendant Montgomery & Collins. Judgment will be entered accordingly.
 
 
 [4]
 Appellants seem to contend that the district court had an unexplained change of heart when it translated the July 7th order into its judgment three days later, on July 10, 1987. In its judgment, the district court stated that "in no event can punitive damages be collected from Illinois Union Ins. Co. in excess of $275,000.00 as assessed for the same wrong as set out above, ..." Appellants read this statement as if the court had said that no more than $275,000.00 could be collected from Illinois Union unless the wrong for which the $350,000.00 was assessed should be considered separate or distinct
 Thus, appellant-plaintiffs argue, this court is still free to find that (1) there were two separate and distinct wrongs, and (2) therefore the judgment should be read as awarding $625,000.00. This argument is without merit. The district court clearly rejected plaintiffs "two wrongs" theory and in no way retreated from that position in its judgment. Appellant-plaintiffs attempt in their briefs to reargue the issue of whether the two punitive damage awards redressed different wrongs. On the one hand, they contend that the judgment can be construed to have left open the issue and to have awarded the full $625,000.00--two mildly inconsistent positions. In their Reply Brief, however, appellants stated that "the jury's verdict could not assess 'cumulative' or double punitive damages for the same wrong [because there were two distinct wrongs]. The district court's finding to the contrary constitutes plain error and is due to be reversed." (Emphasis added.) This statement discloses that plaintiff-appellants knew that the district court rejected their "two wrongs" theory and could not be said to have left the question open.
 Appellant-plaintiffs chose not to cross-appeal the district court's rejection of the "two wrongs" theory. Instead, they attempted to appeal the rejection of their "two wrongs" theory sub silentio by arguing as appellees in the first appeal that this court should affirm the judgment on the basis of their "two wrongs" theory.
 They now argue that when this court affirmed the district court's judgment without opinion in the first appeal, we somehow adopted their "two wrongs" theory. As is clear from our disposition of this appeal, this court upheld the district court's judgment in the first appeal because, despite the defendants arguments to the contrary, a judgment awarding $275,000.00 in punitive damages against Illinois Union and $175,000.00 in punitive damages against Montgomery & Collins does not penalize either of the parties twice.
 Since the Delaneys did not take the opportunity to cross-appeal the district court's rejection of their "two wrongs" theory in the first appeal, their appeal of the clarification order, to the extent that they claim more than $450,000.00, is barred. See Creole Shipping, Ltd. v. Diamandis Pateras, Ltd., 554 F.2d 1348 (5th Cir.1977). Therefore, we need not consider their arguments in this appeal that there were two separate wrongs redressed by the jury's punitive damages awards and thus the judgment should be read to have awarded $625,000.00.