WILSON, Circuit Judge,
dissenting:
The majority’s disposition of this case delivers a powerful blow to the far-reaching guarantees of representation and expert assistance embodied in 18 U.S.C. § 3599. In the course of the opinion, it unnecessarily forecloses expert funding for practically any individual represented by § 3599 counsel, misstates this circuit’s jurisdictional precedent, and misinterprets the scope of a federal statute. I cannot join in its disposition of these appeals.
I
Gary sought to utilize the clemency hearing to cast doubt on his guilt for the charged crimes. The means by which this could be accomplished entailed the presentation of medical testimony that neither (1) the bite mark on one victim nor (2) the semen found on another victim was consistent with Gary being the perpetrator. The two experts, Gary contends, would testify at the hearing to the high probability that those pieces of evidence were inconsistent with Gary’s biology. Because the majority finds that the request for experts merely encompassed “reiteration of the opinions [the experts] gave before the District Court,” it concludes that the experts were not reasonably necessary to the clemency-hearing representation. Maj. Op. at 1270. This holding fails to appreciate the unique character of clemency, as opposed to federal habeas, and broadly forecloses funding for expert testimony that has previously been presented to any court.
The clemency board’s “view of a case necessarily differs from that of a local court or law enforcement agency.” Georgia State Board of Pardons and Paroles, Clemency, http://www.pap.state.ga.us/ opencms/export/sites/defaulVclemeney/ (last visited June 18, 2012); see also Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 284, 118 S.Ct. 1244, 1251, 140 L.Ed.2d 387 (1998) (plurality opinion) (recognizing the differences between judicial and clemency proceedings). Clemency proceedings operate unconstrained by the strictures of AEDPA and federal rules of evidence and procedure. Unlike the federal courts, the clemency board can base its decision on information never presented to state courts for adjudication. That consideration is particularly relevant where, as here, the factual basis of an argument has been developed almost exclusively in federal court.[1] See Cullen v. Pinholster, 563 *1280 U.S. -, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (“[RJeview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.”). The clemency board obtains an accurate portrayal of the expert opinions by asking questions without concern for federal evidentiary rules, by judging the credibility of the experts, and then by weighing their conclusions against the other facts and testimony from the course of proceedings. The clemency board, unlike the courts, is not chained to the credibility findings of any prior adjudicative body. See Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir.1980) (“One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses.”). The clemency process has been set apart as “provid[ing] the ‘fail safe’ in our criminal justice system” when traditional channels of review are exhausted, Herrera v. Collins, 506 U.S. 390, 415, 113 S.Ct. 853, 868, 122 L.Ed.2d 203 (1993), and its independent nature necessarily fosters this role as the final stop before execution of a capital sentence.
To deny expert funding on the ground that the testimony has already been presented during the course of collateral review is to render § 3599(f) nearly meaningless. The majority holds that expert services are not “reasonably necessary” for representation in a clemency proceeding because that testimony is available in the form of a transcript. But won’t this always be the case? The substantive-type claims for which experts are requested will almost certainly have served as a ground for relief in state postconviction and federal habeas proceedings, and transcripts of that testimony would be available to a clemency petitioner. A death-sentenced inmate would be ill advised to hold on to potentially meritorious claims in hopes that they could serve as the basis of a compelling clemency petition. The majority’s reasoning on this point requires denial of the overwhelming majority of (if not all) requests for expert assistance at a clemency hearing because none will be “reasonably necessary.” And it is particularly unjust here, as Gary had no indication that during federal habeas proceedings his counsel should be developing testimony for an actual innocence claim to present to a clemency board.[2] The majority’s interpretation renders § 3599(f)’s authorization for expert services meaningless- — -no indigent death-sentenced petitioner can meet the “reasonably necessary” threshold to even be considered for funding.
In a footnote, the majority recognizes two cases as disposing of a similar issue involving duplicative testimony. Neither offers a convincing parallel to the issue we confront. The majority points to Fautenberry v. Mitchell, 572 F.3d 267, 269-71 (6th Cir.2009), as affirming the district court on the ground that the evidence was cumulative. Maj. Op. at 1269 n.16. The district court in that case “concluded ... that the service requested was not ‘reasonably necessary’ because Fautenberry had provided no reasons to explain why it would be necessary.” Id. at 269. The Sixth Circuit likewise held that, based on the petitioner’s failure to put before the district court any argument regarding reasonable necessity, there was no abuse of discretion notwithstanding his relevant *1281 arguments to the court of appeals. Id. at 270 (explaining that Fautenberry “did not argue to the district court” the reasonable necessity of the services); id. at 272 (Moore, J., concurring) (“The majority is correct ... that Fautenberry did not present this argument to the district court. I therefore cannot say that the district judge abused his discretion based on the record before him.”). A fair reading of that case reveals that the court’s affirmance is not dependent on the cumulative nature of the expert services requested. Nor is Smith v. Dretke persuasive, as that case found that expert testimony requested for use in federal habeas proceedings was supplementary to that already presented to the state court. 422 F.3d 269, 288-89 (5th Cir.2005). As explained above, federal habeas proceedings necessarily involve a different inquiry than clemency, which can consider a wealth of information above that of federal courts. Smith is therefore uninformative to our the determination of what is “reasonably necessary” for representation in a state clemency proceeding.
In arriving at its conclusion, the majority construes the statutory phrase “reasonably necessary” to require a “substantial need” for the requested expert services. See Maj. Op. at 1269. This standard is derived from Fifth Circuit case law, e.g. Riley v. Dretke, 362 F.3d 302, 307 (5th Cir.2004), which we cited in United States v. Brown, 441 F.3d 1330, 1364 (11th Cir.2006). In Brown, although we identified that “the Fifth Circuit has held that the statute requires the defendant to demonstrate ‘substantial need’ for the requested assistance,” 441 F.3d at 1364, we did not utilize the “substantial need” standard to decide that appeal. Nor did we even mention the word substantial in the context of evaluating the claim. See id. at 1363-65. Circuit precedent therefore does not require application of this standard, and I do not read the majority opinion here to actually invoke that standard, since it makes an appearance only in passing.[3] Nor should it do so, as elevating the standard from “reasonable” to “substantial” implies that the movant must carry a heavier burden than that contemplated by the statute.
I do not by any means imply that expert testimony is always “reasonably necessary” to representation of a clemency petitioner. But I cannot justify depriving a death-sentenced individual of live, unconstrained, expert testimony on the ground that reciting it from a transcript is an adequate substitute. The duty of the clemency board is to make an independent determination about the sentence that has been handed down to the petitioner, and I believe that the expert testimony seeking to cast doubt on Gary’s role in the crimes is reasonably necessary for representation in that proceeding. At the same time, I recognize that under the terms of the statute, the district court could find that expert services were reasonably necessary for representation but nevertheless deny funding. See 18 U.S.C. § 3599(f) (“Upon a finding that ... expert ... services are reasonably necessary for the representation of the defendant, ... the court may authorize the defendant’s attorneys to obtain such services .... ” (emphasis added)). I would thus vacate the district court’s order and remand to the district court to determine whether it will exercise its discretion to allow funding for these reasonably necessary services.
II
Next, in concluding that we lack jurisdiction to review the district court’s order denying reconsideration of its denial of funding, the majority reinterprets circuit *1282 precedent to the point of nonrecognition. At the outset, I must clarify what the district court did — and did not — decide in its January 21, 2011 order at issue in Appeal No. 11-10705. The district court interpreted 18 U.S.C. § 3599 as authorizing an appointed attorney “to continue to represent [the petitioner] throughout all available federal habeas proceedings and in state clemency proceedings.” Gary v. Humphrey, No. 97-181, 2011 WL 205772, at *6 (M.D.Ga. Jan. 21, 2011) (emphases omitted). Because it concluded that the extraordinary motion for new trial (the “state motion”) at issue here was not the equivalent of clemency, the district court “rejecte[ed] any suggestion that federally funded counsel should be provided to pursue the extraordinary motion for new trial.” Id. at *7. It determined on the merits that a federal statute, 18 U.S.C. § 3599, does not extend to an attorney’s representation in a state proceeding that is not clemency. The district court did not issue an administrative-type order disapproving of a monetary amount requested for an attorney’s particular undertaking within the scope of his representation. The cases relied on by the majority involve precisely that latter situation that we are not faced with today, and I cannot join in its portrayal of that precedent as controlling the resolution of this appeal. The January 21 order was final as a conclusive limitation on the scope of a federal statute, regardless of whether Gary’s counsel used the “magic words” in requesting the disputed funds.
Pursuant to 28 U.S.C. § 1291, we have jurisdiction to consider “all final decisions of the district courts.” Where the litigation underlying a challenged order has been conclusively resolved, “[w]e treat the postjudgment proceeding as a free-standing litigation.” Thomas v. Blue Cross & Blue Shield Ass’n, 594 F.3d 823, 829 (11th Cir.2010) (quotation omitted). “A post-judgment order is final for purposes of section 1291 only if the order disposes of all issues raised in the motion.” Id. In construing § 1291, “the requirement of finality is to be given a ‘practical rather than a technical construction.’ ” Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)).
Gary appeals from the order denying reconsideration of the denial of funds for his representation in the state motion for new trial. This was the only issue presented in the motion for reconsideration. In that order, the district court finally, conclusively, and expressly ruled that no payment would be authorized for appointed counsel’s work on the state motion— period.[4] The district court based its decision on the conclusion that § 3599, in light of Harbison, did not extend to appointed counsel’s “pursuit of] an extraordinary *1283 motion for new trial.” Gary, 2011 WL 205772, at *7. This determination “finally settle[d] the matter in litigation,” Delaney’s Inc. v. Ill. Union Ins. Co., 894 F.2d 1300, 1305 (11th Cir.1990), which concerned the scope of federally funded representation authorized by § 3599. There was nothing ambiguous or tentative about the district court’s determination that would indicate that its ruling would be subject to a third, independent consideration at some future date. Cf. Thomas, 594 F.3d at 830 (holding that an order was not final where the district court did not conclusively rule either way on the post-judgment issue). I therefore conclude that the order denying reconsideration was final in the context of the postjudgment proceedings.
But I do not even have to independently arrive at this conclusion, as controlling precedent also confounds the majority’s jurisdiction-based dismissal. In Harbison, the Supreme Court resolved a question about the scope of representation under § 3599 as related to state clemency. The district court in that case issued an order practically indistinguishable from the one the district court issued here, finding conclusively that the scope of § 3599 did not contemplate federally funded counsel’s representation of a petitioner in state clemency proceedings. Compare Harbison v. Bell, No. 97-52, 2007 WL 128954, at *6-7 (E.D.Tenn.2007) (framing the issue as “whether [§ 3599] provides for federally-appointed counsel during state clemency proceedings”), with Gary, 2011 WL 205772, at *1 (“The issue presented ... is whether Petitioner is entitled to federally funded counsel to pursue his extraordinary motion for new trial.”). The Sixth Circuit recognized the appeal as challenging “a final order denying counsel in a clemency proceeding” and concluded that controlling precedent foreclosed the appeal on the merits.[5] Harbison v. Bell, 503 F.3d 566, 570 (6th Cir.2007). In reviewing that decision, the Supreme Court made short shrift of any jurisdictional challenge, noting that “the District Court’s denial of Harbison’s motion to authorize his federal counsel to represent him in state clemency proceedings was clearly an appealable order under 28 U.S.C. § 1291.” Harbison v. Bell, 556 U.S. at 183, 129 S.Ct. at 1485. There is substantively no difference in the jurisdictional inquiry when considering the district court’s failure to extend § 3599 to state clemency proceedings on the one hand and a state motion for new trial on the other.
What is more, we have previously exercised jurisdiction to consider the scope of representation beyond clemency. In In re Lindsey, a panel of this court considered a petition for mandamus to require appointment of counsel for state proceedings concerning a death-sentenced inmate. 875 F.2d 1502 (11th Cir.1989) (Tjoflat, Vance, and Kravitch, JJ.) (reviewing the petition under the predecessor statute of § 3599). The petition in Lindsey “contested] only the district court’s refusal to appoint a psychiatrist and a lawyer ... to assist Lindsey in his pursuit of state-court remedies” for his competency-to-be-executed claim. Id. at 1505. In denying that petition on the merits, we construed the terms of the predecessor to § 3599 to not encompass “any proceedings convened under the *1284 authority of a State.” Id. at 1506. In doing so, we conclusively resolved a question of construction about the scope of representation under the federal statute, which the district court ruled was limited in scope to certain proceedings. See id. at 1506-07. That is exactly what we are asked to do here, and at least one other circuit has explicitly considered post-War-bison whether the scope of § 3599 extends to proceedings occurring after state clemency without questioning the propriety of jurisdiction under § 1291. See Irick v. Bell, 636 F.3d 289, 290 (6th Cir.2011) (reviewing “the district court’s order denying [petitioner] federally funded counsel with respect to his state competency-to-be-executed proceedings and his efforts to reopen state post-conviction proceedings”), cert. denied, — U.S.-, 132 S.Ct. 575, 181 L.Ed.2d 424 (2011).
To justify dismissal, the majority cites to United States v. Rodriguez as broadly holding that “a district court’s decision denying an appointed attorney’s application for compensation under the [CJA] [is] not a final decision reviewable under § 1291.” Maj. Op. at 1270 (citing 833 F.2d 1536, 1537-38 (11th Cir.1987) (per curiam)). A brief glance at even just the introductory paragraph of Rodriguez makes its inapplicability obvious. In Rodriguez, the district court awarded a reduced amount of compensation for work done by an appointed attorney pursuant to his CJA representation — representation on matters within the scope of his CJA duties. 833 F.2d at 1537 & n. 1. Dissatisfied with the amount authorized, the appointed attorney appealed the district court’s “failure to certify a fee award in the amount requested.” Id. at 1537. We ruled that the district court’s “fee determination” was a type of “administrative action” — not a judicial decision— and therefore was not a final order under § 1291.[6] Id.
An order administratively approving (or disapproving) of funds within the scope of an attorney’s federal representation is not remotely comparable to an order conclusively determining whether certain proceedings fall within the representation authorized by § 3599. The order on appeal in Rodriguez decided fees for work completed within the scope of the attorney’s authorized CJA representation. It did not *1285 involve an outright denial of funding for an appointed attorney’s particular undertaking, and it certainly did not construe the scope of a federal statute governing appointed counsel’s representation. Here, the district court expressly ruled that the requested fees were outside the scope of counsel’s § 3599 representation. It determined that no funds would extend to work completed on the state motion and thereby limited the scope of a federal statute. The majority portrays Rodriguez as definitively illustrating a principle that it arrives at only by selectively reading and expansively interpreting that case. I find it completely unrelated to the resolution of any issue presented in this appeal, as judicial construction of the scope of a federal statute can hardly be considered a mere “administrative” task.
The Fifth Circuit confronted a case in the same context as ours and explicitly recognized its jurisdiction to resolve the issue. See Clark v. Johnson, 278 F.3d 459 (5th Cir.2002). In Clark, the district court had previously appointed counsel for federal habeas representation under § 3599’s predecessor, § 848(q)(8). Id. at 460. After Clark was executed, his attorney filed for reimbursement for “expenses incurred in connection with a state clemency proceeding brought on Clark’s behalf.” Id. In finding that the appellate court had jurisdiction, the Fifth Circuit explained:
The [district court’s] order fully and finally disposes of [counsel’s] request for reimbursement, an issue that is separate from the merits of the federal habeas corpus proceeding. The district court necessarily interpreted the meaning of “proceedings for executive or other clemency” under § 848(q)(8) to exclude state clemency proceedings. Such a decision is qualitatively different from approving or disapproving the amount of expenses reasonably and necessarily incurred by counsel as it definitively determines whether such services are compensable under the Act as a matter of law.
Id. at 461. Clark is indistinguishable from the issue at hand and demonstrates that we have jurisdiction to directly address Gary’s claim on the merits.[7]
As a final thought, it seems that the majority’s conclusion that we may exercise jurisdiction over the district court’s denial of expert fees under § 3599(f) applies with equal force to permit review of the denial of representation under § 3599(e). The majority concludes that the district court had jurisdiction “to determine the scope of duties encompassed under the § 3599(a)(2) appointment,” including “whether the DNA motion fell within that ambit of representation.” Maj. Op. at 1273 n.26. It then concludes that we have jurisdiction under § 1291 to review that determination, but only in the context of its order denying expert fees. Id. The scope of counsel’s federal appointment is exactly what the district court decided in its January 21 order denying reconsideration. Strangely, the majority utilizes the denial of expert fees as a means to review the scope of counsel’s representation under § 3599(e), which produces the same result as if it had followed precedent and deemed the January 21 order final in the first place. It strikes me as more straightforward to treat the order actually limiting counsel’s *1286 representation as presenting the question of the reach of § 3599(e). Instead, the majority opts to foreclose on jurisdictional grounds future appeals concerning the scope of representation under § 3599 when the submission to the district court is styled as a request for compensation, even though the district court must necessarily make a definitive determination on the reach of the statute.
In sum, this is not a situation where the district court found that the petitioner was entitled to a lesser fee than claimed and reduced it accordingly; it is a case where, outright, the district court conclusively ruled that no fee was available under the statute for this work. I therefore find that we have jurisdiction to consider the denial of compensation for representation on the state motion.
Ill
I further disagree with the majority’s perceived limitation on the scope of § 3599, which is based neither in the text of the statute nor the rationale of Harbison. I recognize that, without consideration of the statute or case law, it appears strange at first glance for federally appointed counsel to receive federal funds for representation in a purely state proceeding. But that is what the Court approved in Harbison based on the language of § 3599 — language that the majority recognizes is “indeed broad” but then quickly narrows. And I conclude that the language of § 3599 and the Court’s Harbison decision require that appointed counsel represent Gary in the proceedings at issue.
A
Federal law entitles a federal habeas petitioner to appointment of counsel when he is financially unable to obtain adequate representation. 18 U.S.C. § 3599(a)(2). An appointed attorney’s duties are governed by subsection (e):
[Ejach attorney ... shall represent the [petitioner] throughout every subsequent stage of available judicial proceedings, including ... all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the [petitioner] in such competency proceedings and proceedings for executive or other clemency as may be available to the [petitioner].
18 U.S.C. § 3599(e) (emphases added). Harbison clarified that under the plain language of the statute, federally appointed counsel’s duties extend to state clemency proceedings. 556 U.S. at 185-86, 129 S.Ct. at 1486. Specifically, “[b]ecause state clemency proceedings are ‘available’ to state petitioners who obtain representation pursuant to subsection (a)(2), the statutory language indicates that appointed counsel’s authorized representation includes such proceedings.” Id. Georgia law permits each convicted individual to file one extraordinary motion for a new trial after thirty days have elapsed from entry of judgment in his criminal proceeding. O.C.G.A § 5-5-41(a), (b). Just as state clemency proceedings are “available” to state petitioners with § 3599 counsel, so too is a state motion for new trial an “available judicial proceeding[ ]” and, thus, encompassed by the plain language of the statute permitting representation in “other appropriate motions and procedures.” 18 U.S.C. § 3599(e); see Harbison, 556 U.S. at 188, 129 S.Ct. at 1487 (explaining that the word “available” “indicates the breadth of the representation contemplated” by the statute); see also Felker v. Turpin, 83 F.3d 1303, 1312 & n. 6 (11th Cir.1996) (describing an extraordinary motion for new trial as a “state avenue open to process the claim” made by petitioner (alteration and quotation marks omitted)).
*1287 The reach of § 3599 is not unbounded.[8] Harbison informs us that the statutory term “subsequent” is the operative word to narrow the scope of § 3599(e) rather than any “strict division between federal and state proceedings.” 556 U.S. at 188, 129 S.Ct. at 1488; see also id. at 199, 129 S.Ct. at 1494 (Thomas, J., concurring in the judgment) (highlighting the “statute’s silence with respect to a ‘federal’ limitation”). This conclusion follows from the organization of § 3599(e), which “mirror[s] the ordinary course of proceedings for capital defendants.” Id. (majority opinion) (emphasis added). Therefore, the Court focused on the “sequential organization of the statute” to differentiate between a “subsequent stage” of judicial proceedings on the one hand and “the commencement of new judicial proceedings” on the other. Id. at 188-89, 129 S.Ct. at 1488. Representation under § 3599 is proper in the former, but not the latter, type of proceeding. See id. In this case, the extraordinary motion for new trial falls within the ambit of the “ordinary course of proceedings” for a death-sentenced petitioner.
One need only look to relevant case law in order to figure out that death-sentenced petitioners typically file these sorts of extraordinary motions for a new trial after conclusion of their federal habeas proceedings. See, e.g., In re Davis, 565 F.3d 810, 814 (11th Cir.2009) (per curiam) (petitioner filed the state motion after federal habeas proceedings); Felker, 83 F.3d at 1312 & n. 6; Blankenship v. Terry, No. 05-194, 2007 WL 4404972, at *42 (S.D.Ga. Dec. 13, 2007) (quoting state’s argument in federal habeas briefing that “[petitioner has an available remedy in state court to seek post-conviction DNA testing” (emphasis added)); Jefferson v. Terry, 490 F.Supp.2d 1261, 1345 n. 24 (N.D.Ga.2007) (advising petitioner during federal habeas that he “can pursue a claim of actual innocence in state court by filing an extraordinary motion for new trial”), rev’d in part, 570 F.3d 1283 (11th Cir.2009); Crawford v. State, 278 Ga. 95, 597 S.E.2d 403, 403 (2004) (petitioner filed extraordinary motion after conclusion of federal habeas review). And this is a logical order, given the high standard for granting extraordinary motions for new trial, see Wright v. State, 310 Ga.App. 80, 712 S.E.2d 105, 107 (2011) (noting the six facts a movant must establish for the motion to be granted), and the discretionary procedure for review of their denial, see Crawford, 597 S.E.2d at 404. This motion, much like a clemency hearing, presents the state with a final chance to rectify any fundamental miscarriage of justice. The most appropriate time for an individual to file one of these motions would undoubtedly be after all the evidence has been investigated, the facts developed, and the arguments made in the traditional channels of review (i.e. state postconviction and federal habeas proceedings). Undoubtedly many cases are like this one, where the basis for the extraordinary motion was not fully developed until federal habeas counsel had been appointed. Cf. Harbison, 556 U.S. at 193, 129 S.Ct. at 1490-91 (“Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in the state clemency proceedings that typically follow the conclusion of § 2254 litigation .... [T]he work of competent counsel during habeas corpus representation may provide the basis for a persuasive clemency application.”). As a result, I have a hard time believing that habeas petitioners *1288 are jumping at the chance to file their one extraordinary motion for new trial before developing the facts and argument that would serve as its basis. If each death-sentenced individual is entitled to one of these motions, why would he rush to present it to the state courts before developing all the facts and arguments to support it?
Our analysis is also informed by looking to what would not be a subsequent stage of proceedings. In Harbison, the Supreme Court provides the quintessential example: state postconviction litigation.[9] See id. at 189-90, 129 S.Ct. at 1488-89. This is because under Congress’s scheme governing federal habeas review, presentation of a claim to state courts is a prerequisite to federal review of that claim.[10] Id. at 189, 129 S.Ct. at 1488; see 28 U.S.C. § 2254(b)(1). No provision of federal or state law requires a state extraordinary motion for new trial to precede federal habeas review, the point at which counsel’s appointment attaches under § 3599. Quite the opposite, one state motion can be filed at any time after the expiration of the thirty-day statutory period. See O.C.G.A. § 5-5-41(a), (b).
Instead of considering the “ordinary course” of proceedings for a death-sentenced inmate, the majority has crafted a novel standard whereby § 3599(e) is informed by the specific course of proceedings contemplated by the state in which the petitioner is imprisoned. In examining the representation at issue here, the majority relies almost exclusively on the idea that clemency comes after federal habeas proceedings have concluded, while the state motion for new trial can be filed at any time. Maj. Op. at 1276-78. But it is not so invariably true that clemency proceedings occur after the conclusion of federal habeas. In Utah, for example, a death-sentenced inmate can petition for clemency at any time after conclusion of the direct appeal. Utah Admin. Code r. 671-312-3(1); see also Conn. GemStat. § 54-130a(a), (b); State of Delaware, Rules of the Board of Pardons, http:// pardons.delaware.gov/information/rules. shtml#Rule7 (last visited June 15, 2012) (excluding death-sentenced petitioners from the typical rule that applications for commutation must follow the conclusion of collateral review); Louisiana Department of Public Safety and Corrections, Rules, http://www.doc.louisiana.gov/view.php? cat=13&id=83 (last visited June 15, 2012) (requiring under Rule ID that a petition for clemency be made within one year of denial of direct appeal); Washington State Clemency & Pardons Board Policies, http://www.governor.wa.gov/clemency/ documents/policies.pdf (last visited June *1289 15, 2012) (stating that a petition for pardon or commutation generally “will not be heard until all direct appeals have been exhausted”). Thus, in a number of states, a prisoner may petition for clemency within the same relevant time frame as an inmate in Georgia can file the extraordinary motion for new trial. The Supreme Court did not consider these nuances in timing of a clemency petition to determine whether it “ordinarily” follows representation in federal habeas proceedings, and neither should we.
Additional considerations bear on the propriety of finding that § 3599 encompasses this request. The representation here involves work on an extraordinary motion for new trial — the only one that Gary can present under state law. If granted, the federal appointment must end because retrial is a new proceeding, and the state would be required to appoint counsel to Gary for retrial. Harbison, 556 U.S. at 189, 129 S.Ct. at 1488. Furthermore, the basis for this motion was developed pursuant to counsel’s representation in federal habeas proceedings, which means that counsel is already intimately familiar with the details and arguments. See id. at 193, 129 S.Ct. at 1491 (“[T]he work of competent counsel during habeas corpus representation may provide the basis for a persuasive clemency application. Harbison’s federally appointed counsel developed extensive information ... that was not presented during his trial or appeals”). Lastly, the majority’s reasoning related to federalism — namely discomfort with federal supervision over purely state proceedings — applies with equal force to representation in clemency proceedings, and the Supreme Court has already considered and flatly rejected those concerns in Harbison. See id. at 192 n. 9, 129 S.Ct. at 1490.
Unlike state postconviction proceedings instituted after the conclusion of federal habeas review, the extraordinary motion for new trial does not constitute a new proceeding any more than state clemency would. It is merely one of the “multiple assurances that are applied before a death sentence is carried out.” Kansas v. Marsh, 548 U.S. 163, 193, 126 S.Ct. 2516, 2536, 165 L.Ed.2d 429 (2006) (Scalia, J., concurring). The limitation that the majority crafts is not found in the text of § 3599 or the direction of Harbison. Instead, it is a judgment that Congress must not have meant what it said when using broad phrases like “every subsequent stage,” “all available post-conviction process,” and “other appropriate motions and procedures.” 18 U.S.C. § 3599(e). It is not up to us to determine whether the result of application of the statute “upholds a very bad policy.” Harbison, 556 U.S. at 198, 129 S.Ct. at 1494 (Thomas, J., concurring in the judgment) (quotation omitted). Section 3599 means what it says and covers counsel’s representation here.
B
The district court order denying funding for expert services, Appeal No. 11-15396, was premised on the conclusion that § 3599 does not cover counsel’s representation on the state motion. Because I find that it does, I would vacate its order and remand for consideration of whether those services were reasonably necessary to counsel’s representation under the statute and whether funding should be provided.
IV
The majority’s resolution of the issues presented here works to undermine the text of § 3599 and Supreme Court precedent. It also disturbs well-settled law governing our ability to review final orders. With its opinion, the majority offers up *1290 justification to foreclose a grant of expert assistance to practically all death-sentenced clemency petitioners, even though Congress has specifically provided for those services by statute in recognition of “the seriousness of the possible penalty and ... the unique and complex nature of the litigation.” 18 U.S.C. § 3599(d). It ignores the unquestionably broad language describing the scope of representation under § 3599 in favor of a state-specific approach inconsistent with Harbison. And it ensures that any rejection of funding for counsel to represent a death-sentenced individual in any proceeding apart from state clemency is unreviewable — unless, of course, it is appealed under the guise of a denial of expert funding. I disagree, and I would reverse the district court’s order limiting the scope of representation under § 3599(e), vacate the orders regarding expert services, and remand to the district court.

. During federal habeas proceedings, we reviewed the potential exculpatory impact of the bite-mark exemplar but did not examine the value (if any) of the other testing requested. For Gary’s claims under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which concerned the request for serological testing, we concluded that he was not entitled to relief because the denial of expert services was essentially a determination of state law unreviewable on federal habeas. Gary v. Hall, 558 F.3d 1229, 1251 n. 37 (11th Cir.2009) ("[Wjhether Gary was entitled to funds for the employment of a serologist was a matter of state law.”); id. at 1254 ("Gary’s denial-of-funds claim did not present a federal constitutional question, and the district court should not have entertained it.”). For Gary’s claim under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), we ruled that the bite-mark exemplar was inconclusive and, therefore, not *1280 material to the outcome of the trial. Gary, 558 F.3d at 1257.

. At the time this expert testimony was developed, Harbison had not been decided, and controlling Eleventh Circuit precedent did not extend appointed counsel’s representation to clemency proceedings. See King v. Moore, 312 F.3d 1365, 1365-66 (11th Cir.2002) (per curiam).

. The Fifth Circuit has not applied this standard in a published opinion after Riley, nor have we acknowledged it in any case other than Brown.

. It cannot matter for our jurisdictional analysis that appointed counsel originally presented the district court with one CJA voucher requesting payment for work completed on two distinct proceedings (state clemency and the state motion for new trial). To hold that this would be appealable if the requests were made on two different sheets of paper, or to impose a "magic words” requirement on the label of the filing, is impractical and requires the sort of hypertechnical construction that the Supreme Court has specifically instructed us not to employ. See Eisen, 417 U.S. at 171, 94 S.Ct. at 2149. The district court made abundantly clear that the January 21 order denying reconsideration was a final resolution of the issue of counsel's representation for work on the state motion. In fact, the district court here had two opportunities to clarify the scope of its denial, and it explained in both orders that the scope of § 3599 did not extend to these proceedings. See Gary v. Terry, No. 97-181 (S.D.Ga. Dec. 10, 2010) (order denying payment for compensation); Gary, 2011 WL 205772 (order denying reconsideration).

. We followed a path similar to the Sixth Circuit and arrived at the same conclusion prior to the Supreme Court's Harbison ruling. See King v. Moore, 312 F.3d 1365 (11th Cir. 2002) (per curiam) (Edmondson, Black, and Marcus, JJ.). In King, the panel was faced with a district court’s order that construed § 3599's predecessor as not extending federal counsel’s representation to state clemency proceedings. Id. at 1366. The panel affirmed without questioning the propriety of the exercise of jurisdiction over the order interpreting the reach of the federal statute.

. This was also the relevant holding in the cases cited by the majority in footnote 19, none of which involved a district court’s determination that the services for which compensation was requested fell outside the scope of representation authorized by the federal statute. See In re Carlyle, 644 F.3d 694, 698 (8th Cir.2011) (finding no jurisdiction “to review a district court's reduction of a CJA voucher”); United States v. Bloomer, 150 F.3d 146, 148 (2d Cir.1998) (per curiam) (“[Orders concerning fee determinations for services already rendered ... are not appealable ...." (emphasis added)); United States v. Stone, 53 F.3d 141, 141 (6th Cir.1995) (holding that the court lacked jurisdiction over the district court’s order approving compensation in an amount less than requested); Shearin v. United States, 992 F.2d 1195, 1197 (Fed.Cir. 1993) ("Fee determination under the [CJA] is an administrative rather than judicial determination ....”); United States v. Davis, 953 F.2d 1482, 1497 n. 21 (10th Cir.1992) (noting that the district court’s fee determinations are administrative and not appealable but finding the claim at issue was "fundamentally different from claims concerning the amount of payment,” thereby permitting review of the district court's alleged failure to review CJA vouchers); Landano v. Rafferty, 859 F.2d 301, 302 (3d Cir.1988) (per curiam) ("[A] district court decision determining the amount of [counsel’s] compensation is essentially administrative in nature.’’); In re Baker, 693 F.2d 925, 927 (9th Cir.1982) (per curiam) ("[T]he district judge's certification of attorneys’ fees is an administrative act ...."); United States v. Smith, 633 F.2d 739, 740 (7th Cir.1980) ("[Although some compensation must be awarded appointed counsel under the [CJA], the district judge is accorded exclusive discretion in fixing the amount.” (citations and quotation marks omitted)).

. Clark found jurisdiction proper as a final order under § 1291 and under the collateral order exception to § 1291’s finality requirement. 278 F.3d at 460-61 ("We conclude therefore that under either theory this court has appellate jurisdiction as to the district court’s order."). I agree that we could alternatively exercise jurisdiction here under the collateral order exception, though I will not belabor that point because it is obvious to me that the district court issued a final order under § 1291.

. Nor does § 3599 provide a prisoner with a government-issued blank check, as the statute sets the maximum compensation for the attorney's hourly representation and for the expert services requested. 18 U.S.C. § 3599(g). Any requested increase in payment is subject to court approval. Id.

. Concurring in the judgment, Chief Justice Roberts provided other examples of proceedings that would not be subsequent stages, including "a challenge to prison conditions or a suit for divorce in state court.” Harbison, 556 U.S. at 195-96, 129 S.Ct. at 1492. I understand this statement to mean that litigation unrelated to counsel's § 2254 representation constitutes a "new proceedingf]” not entitled to funding under § 3599, and I do not believe it speaks to the situation at hand where the state motion contemplates issues intertwined with counsel's § 2254 representation. See also Martel v. Clair, 565 U.S.-, 132 S.Ct. 1276, 1283, 182 L.Ed.2d 135 (2012) (explaining that § 3599 extends a right to counsel "for all post-conviction proceedings and related activities”).

. The Court approved of representation in some state-specific litigation germane to counsel's federal habeas representation. Harbison, 556 U.S. at 189-90 & n. 7, 129 S.Ct. at 1488-89 (noting that a case-by-case determination is appropriate where counsel seeks to return to state court to litigate unexhausted claims in the federal petition); id. at 187 n. 6, 129 S.Ct. at 1487 (explaining that it would be absurd to prohibit counsel from representing a state inmate in application for a state court stay of execution before seeking such relief in federal court).