**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0429n.06

Case No. 16-2130

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jul 21, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JP MORGAN CHASE MANHATTAN BANK, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| LARRY J. WINGET; LARRY J. WINGET LIVING TRUST, | ) ) ) | |
| Defendants-Appellants. | ) | |

**BEFORE: GIBBONS, ROGERS, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** This case arises from a longstanding commercial dispute between an administrative agent for a group of lenders that extended credit to a company, and the owner and his trust for the company. Because the district court: 1) properly interpreted the language of the guaranty to hold the owner responsible for the full payment of costs and expenses under the final judgment; 2) properly denied the owner relief under Fed. R. Civ. P. 60(b)(5) and determined that there was no partial satisfaction of the attorney fees and expenses; and 3) properly determined that the doctrine of res judicata did not bar the administrative agent from recovering costs and expenses, we **AFFIRM** the district court's decision.

**I.**

The dispute between the parties to this appeal stretches back to March 28, 2003, when Venture Holdings Company, LLC ("Venture"), an entity owned and controlled by Larry J. Winget ("Winget") and/or The Larry J. Winget Living Trust (the "Trust"), filed a Chapter 11 petition for bankruptcy. **E.D. Mich. Case No. 2:08-cv-13845, Complaint, RE 1, Page ID # 2-3.**[1] JPMorgan Chase Bank, N.A. ("Chase") is the administrative agent for a group of lenders that extended credit to Venture pursuant to a Credit Agreement signed in 1999 (the "Credit Agreement"). **Credit Agreement, RE 530-1 – 530-2, Page ID # 18741-18892.**[2] The Credit Agreement was amended several times, and this appeal arises out of the eighth and final amendment (the "Eighth Amendment"). **Guaranty, RE 487-1, Page ID #16717-16729; Pledge of P.I.M. Management Co., RE 525-4, Page ID # 18579-18591; Pledge of Venco #1, L.L.C., RE 525-5, Page ID #18592-18604.** The Eighth Amendment included a guaranty (the "Guaranty") and two related pledge agreements (the "Pledges"). ***Id.***

When Venture filed for bankruptcy protection, the filing was an event of default under the Credit Agreement, and all obligations under the Credit Agreement became immediately due and payable. **RE 1, Page ID #5.** After an attempt at restructuring failed, Venture's assets were liquidated and the proceeds applied to Chase's underlying debt. However, Chase and the lenders were still owed more than $300 million under the Credit Agreement. ***Id*. at Page ID #10.** Based on the Pledges, Winget paid Chase $50 million for the release of the pledged stock. However, there still remained a substantial balance due to Chase. Thereafter, Chase brought its first action

---

[1] There are three different district court records at issue in this case. Any citation to the record with "RE" that does not specify the specific district court case is citing to E.D. Mich. Case No. 2:08-cv-13845, since that is the major record in this appeal. The other district court cases are cited for purposes of background.

[2] Chase is the successor to the original Administrative Agent, Bank One.

against Winget and the Trust to enforce the Guaranty. There are several sections of the Guaranty at issue in this appeal, but the most important are Sections 3, 10, and 17.

Section 3 of the Guaranty provides, in relevant part, as follows:

SECTION 3. The Guaranty. . . . Notwithstanding anything herein or elsewhere to the contrary, no action will be brought for the repayment of the Guaranteed Obligations under this Guaranty and no judgment therefor will be obtained or enforced against Larry Winget other than with respect to the Pledged Stock . . . .

**RE 487-1, Page ID #16718.**

Section 10 of the Guaranty provides, in relevant part, as follows:

SECTION 10. Application of Payments. All payments received by the Administrative Agent hereunder shall be applied by the Administrative Agent to payment of the Guaranteed Obligations in the following order unless a court of competent jurisdiction shall otherwise direct: (a) FIRST, to payment of all costs and expenses of the Administrative Agent incurred in connection with the collection and enforcement of the Guaranteed Obligations . . . .

**RE 487-1, Page ID #16721.**

Section 17 of the Guaranty provides, in relevant part, as follows:

SECTION 17. Costs of Enforcement. The Guarantor agrees to pay all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by the Administrative Agent or any Lender or any Affiliate of any Lender in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, the Guarantor with respect to his obligations hereunder.

*Id*., **Page ID #16724-16725.**

**The 2005 Action**

In 2005, Chase sued Winget and the Trust to enforce specific provisions of the Guaranty providing Chase with rights to inspect the books and records of the pledger companies under the Pledges (the "2005 Action"). **RE 497, Page ID #17590-17591.** Chase also brought a claim to recover its expenses under Section 17 of the Guaranty, and Winget brought certain counterclaims against Chase related to Chase's conduct during the bankruptcy proceedings. **E.D. Mich. Case**

**No. 2:05-cv-74141, Complaint, RE 1, Page ID #11.** The district court found in Chase's favor and granted specific performance regarding the books-and-records provision of the Guaranty (**E.D. Mich. Case No. 2:05-cv-74141, Amended Order, RE 50, Page ID #591-594**), and this Court affirmed (***JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 579 (6th Cir. 2007)**)). However, the district court severed the counterclaims from the 2005 Action, including Chase's claim to recover its expenses under Section 17 of the Guaranty, and instructed Winget and the Trust to bring them in a separate suit.

### The 2006 Action

In 2006, Winget and the Trust brought the counterclaims from the 2005 Action against Chase, alleging that it had wrongfully and purposefully diminished the value of certain companies owned by Winget during the course of the Venture bankruptcy in order to gain assets pledged by Winget under his limited Guaranty (the "2006 Action"). On March 7, 2007, the district court dismissed the 2006 Action on the grounds that Winget and the Trust's claims were barred by res judicata. **E.D. Mich. Case. No. 2:06-cv-13490, Memorandum and Order Granting Motion to Dismiss, RE 28, Page ID #1064-1081.** Chase did not bring its claim to recover expenses under Section 17 of the Guaranty during the 2006 Action.

### The 2008 Action

In 2008, Chase filed the present action (the "2008 Action") seeking to enforce the Guaranty against Winget and the Trust and alleging that its recourse against the Trust was unlimited. **RE 1.** On January 28, 2009, Chase moved for summary judgment as to Count I, pursuant to which it claimed that the Trust had unlimited liability under the Guaranty. **RE 23.** The district court denied Chase's motion for summary judgment without prejudice and allowed the Trust to file a counterclaim seeking reformation of the Guaranty to determine whether the

parties' intended the Guaranty to be limited to the pledged stock and subject to release upon payment of $50 million as to both Winget and the Trust. The district court bifurcated the case and stayed all claims related to Winget's limited personal liability obligations under the Guaranty. **RE 19.** For over two years, the parties engaged in discovery related to the Trust's liability under the Guaranty. On October 17, 2012, after an eight-day bench trial on only the Trust's counterclaim for reformation, the district court reformed the Guaranty to limit Chase's recourse against the Trust to the pledged stock, subject to release upon payment of $50 million. **RE 365, Page ID #13835.**

### 2008 Action Initial Appeal

On January 29, 2014, following years of further litigation, the district court entered final judgment against Winget and the Trust in the amount of $425,113,115.59, plus attorney fees and costs under Section 17 of the Guaranty. **RE 487.** The district court limited Chase's recourse, as to both Winget and the Trust, to $50 million, the amount of the payment for the pledged stock. Chase appealed the reformation decision to this Court (the "2008 Action Initial Appeal").

On February 20, 2015, this Court reversed the district court's decision on reformation, concluding that the Guaranty should not have been reformed to limit the obligations of the Trust because, under the Guaranty, the parties did not agree to treat Winget and the Trust as one in the same. *JPMorgan Chase Bank, N.A. v. Winget*, **602 F. App'x 246, 259 (6th Cir. 2015)** (finding, "Winget and the Trust are separate and distinct legal persons" with distinct obligations under the Guaranty). This Court determined that Chase's recourse against Winget was limited by Section 3 of the Guaranty to $50 million. The case was then remanded back to the district court, and a final judgment was entered pursuant to which the Trust's obligation was for the full amount of the deficiency of the judgment without limitation under the Guaranty. **RE 568.**

**Chase's Motion for Costs and Expenses**

On July 6, 2015, Chase filed a revised motion under Section 17 of the Guaranty seeking $12,693,867.67 in fees and expenses allegedly incurred in the 2005, 2006, and 2008 Actions. **RE 563, Page ID # 23293-23303.** In response, Winget and the Trust argued that res judicata barred Chase from seeking recovery of costs and expenses incurred in the 2005 and 2006 Actions. Winget and the Trust also asserted that in light of this Court's holding that the obligations of Winget and the Trust are separate and distinct under the Guaranty, Chase must segregate the costs and expenses allegedly incurred in enforcing each guarantor's obligation and seek recovery from Winget and the Trust separately under Section 17 of the Guaranty.

In an order entered on January 13, 2016, the district court rejected these arguments and awarded Chase $11,154,874.65 in costs and expenses as against both Winget and the Trust pursuant to Section 17 of the Guaranty. **RE 671, Page ID #24923.** Winget then filed a motion for partial satisfaction of judgment pursuant to Fed. R. Civ. P. 60(b)(5), seeking an order that, pursuant to Section 10 of the Guaranty, Winget's obligations for costs and expenses under Section 17 had been satisfied by his payment to Chase of $50 million that Chase applied to the Guaranty on January 7, 2014. **RE 672, Page ID # 24924-24931.** On June 28, 2016, the district court denied that motion, asserting that Winget's interpretation of Section 10 of the Guaranty "defies logic." **RE 683, Page ID #25019.** Winget and the Trust timely appealed.

**II.**

Defendants appeal the district court's ruling granting Chase's motion for costs and expenses (**RE 671**) in two respects. First, Defendants attack the district court's conclusion that the liability for costs and expenses under the Guaranty should not be apportioned separately between Winget and the Trust. Second, they challenge the lower court's decision that, under

Section 17 of the Guaranty, Chase is entitled to costs and expenses incurred in pursuing the 2005 and 2006 Actions to enforce the Guaranty. Challenges to the district court's interpretation of the contract language present questions of law that are reviewed *de novo*. *See Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005).

Defendants also appeal the district court's disposition of Winget's Rule 60(b)(5) motion for partial satisfaction. (Appellants' Principal Br. at 10 (stating that an issue for appeal is "[w]hether the district court erred by denying Winget relief under Fed. R. Civ. P. 60(b)(5)").) This Court "review[s] for an abuse of discretion a district court's denial of a motion for relief from judgment under Rule 60(b)(5)." *Casasanta v. Fed. Nat'l Mortg. Ass'n*, 591 F. App'x 464, 465 (6th Cir. 2015) (citing *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011) *and Export-Import Bank of the United States v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 247 (6th Cir. 2010)).

### III. ANALYSIS

**A. The district court correctly interpreted the language of Section 17 of the Guaranty when it held that Winget was responsible for the full payment of costs and expenses under the final judgment.**

"Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning." *Haywood v. Fowler,* 475 N.W.2d 458, 461 (Mich. Ct. App. 1991); *see also Wilkie v. Auto–Owners Ins. Co.,* 664 N.W.2d 776, 787 (Mich. 2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonable [sic] expect to apply. If the language is ambiguous, longstanding principles of contract law require that the ambiguous provision be construed against the drafter." (citation omitted)).

The Guaranty's costs and expenses provision in Section 17 provides, in relevant part, "[t]he Guarantor agrees to pay all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by the Administrative Agent . . . in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, the Guarantor with respect to his obligations hereunder." **RE 487-1, Page ID # 16724-25.** The Guaranty describes "Larry J. Winget and the Larry J. Winget Living Trust" as "collectively, the Guarantor" and Chase as the Administrative Agent. *Id*. **at Page ID #16717.** Therefore, the plain language reading of Section 17 indicates that both Winget and the Trust, as Guarantor of the Credit Agreement, are liable for all costs and expenses, including Chase's costs and expenses associated with collection of the guaranteed obligation.

However, Winget and the Trust contend that their obligations under Section 17 should be separate and distinct from each other. **Appellant Br. at 12-15.** Winget and the Trust argue that any award to Chase of fees and costs allegedly incurred in attempting to enforce the Trust's unlimited Guaranty should have been the responsibility of the Trust alone, not Winget. Conversely, they argue that the Trust has no responsibility for fees and costs incurred in attempting to enforce Winget's limited Guaranty.

Winget and the Trust base this theory on this Court's decision in the 2008 Action Initial Appeal which held that "Winget and the Trust are separate and distinct legal persons." *Winget,* 602 Fed. App'x at 256. Although this Court's ruling that Winget and the Trust are separate and distinct legal entities stemmed from the reformation context, Winget and the Trust argue that the limitation on recourse in Section 3 of the Guaranty (which limits Winget's liability to the $50 million pledge) necessarily compels the conclusion that there are two separate and distinct obligations under the Guaranty more generally, including in Section 17.

8

However, this reading of the contract ignores the plain language of the Guaranty and misunderstands this Court's prior ruling. This Court's reformation decision looked to the language of Section 3 and determined that its limitation on recourse applied only to Winget and not to the Trust. *See Winget*, 602 F. App'x at 256. The relevant portion of Section 3 reads as follows, "no action will be brought for the repayment of the Guaranteed Obligations under this Guaranty and no judgment therefor will be obtained or enforced *against Larry Winget* other than with respect to the Pledged Stock . . . ." **RE 487-1, Page ID # 16718 (emphasis added).** Nowhere in the language of Section 3 does the Guaranty indicate that there was a limited obligation placed on the Trust. Section 3 only deals with the limited obligation placed on Winget. Therefore, in the context of this Court's reformation decision, it makes sense that the Court held that Winget and the Trust are separate legal entities for purposes of Section 3's limitation on recourse.

Unlike Section 3, which lists Winget individually, however, Section 17 lists both Winget and the Trust collectively as the "Guarantor" responsible for costs and expenses of collection. **RE 487-1, Page ID #16724-25.** The very next section of the Guaranty ("Section 18") further explains, "[e]xcept as limited by Section 3, the obligations of the Guarantor hereunder shall be joint and several with any other Guarantor and the Guarantor shall be liable for all of the Guaranteed Obligations . . . ." *Id*. at Page ID #16725. The Guaranty contemplated this very distinction and made clear in Section 18 that Section 3 contained a discrete exception to joint and several liability. However, as Section 18 explains, all other liability is joint and several. Thus, both Winget and the Trust are jointly and severally liable for Chase's costs and expenses of collection under Section 17 of the Guaranty.

It is important to note the difference between liability and recourse to fully appreciate Winget and the Trust's erroneous contention. Under the Guaranty generally, the *liability* of the Guarantor (Winget and the Trust) is coterminous, as well as joint and several. However, under Section 3, Chase's *recourse* to collect the underlying debt is limited as to Winget, who is specifically named separately in Section 3 of the Guaranty. The decision from this Court that Winget and the Trust rely on addressed whether the Guarantors are separate for purposes of the recourse provision. This Court's previous decision did not, therefore, negate the entirety of the Guaranty language, especially in the context of the Guarantor's liability. The plain language of the Guaranty still governs liability, and indicates that both Winget and the Trust are jointly and severally liable. Therefore, the district court did not err when it found that Chase may collect the full amount of its costs and expenses incurred in endeavoring to collect on the Guaranty from both Winget and the Trust.

**B. The district court properly denied Winget's motion under Fed. R. Civ. P. 60(b)(5) and determined that there was no partial satisfaction of the costs and expenses Chase incurred in endeavoring to collect on the Guaranty.**

"Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. Ct. App. 1996). "As with statutory construction, when construing a contract the Court should 'give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.'" *Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*, No. 12-14620, 2014 WL 1652197, at *3 (E.D. Mich. Apr. 24, 2014) citing *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).

Winget contends that he was entitled to relief under Fed. R. Civ. P. 60(b)(5) because his prior payment of $50 million to Chase under the Pledges in connection with the underlying debt

also satisfied his obligation under Section 17 to pay costs and expenses Chase incurred in the collection and enforcement of the Guarantee Obligation. Winget refers to Section 10 of the Guaranty to support his position. The relevant portion of Section 10 reads, "[a]ll payments received by the Administrative Agent hereunder shall be applied by the Administrative Agent to payment of the Guaranteed Obligations in the following order . . . FIRST, to payment of all costs and expenses of the Administrative Agent incurred in connection with the collection and enforcement of the Guaranteed Obligations . . . ." **RE 487-1, Page ID #16721.** Section 10 further explains that payments will next satisfy any accrued interest before satisfying outstanding obligations of the principal debt. Winget argues that this Section instructs Chase, as the Administrative Agent, to first deduct from the costs and expenses Chase incurred in connection with collecting on the Guaranteed Obligation the $50 million it received from Winget . Therefore, Winget contends, the $11,154,874.65 Chase is seeking in costs and expenses allegedly incurred in attempting to collect on the Guaranteed Obligations has been satisfied with the $50 million that Winget has already paid to Chase. As Winget sees it, since Chase already received $50 million from Winget, it must first apply that $50 million payment. Therefore, Winget would not be responsible for any payments over and above the $50 million already paid in exchange for the pledged stock.

Winget's argument fails first on procedural grounds, because both the district court and this Court have considered and rejected this exact argument. A Rule 60(b) motion is not the proper vehicle to relitigate issues that were already considered and decided. *See Lacey v. Robertson*, 11 F. App'x 481, 482 (6th Cir. 2001) (affirming denial of a motion for Rule 60(b) relief because the request was "simply an attempt to relitigate the underlying action which is prohibited under Rule 60(b)"); *Whitaker v. New York Univ.*, 543 F. App'x 113, 114 (2d Cir.

2013) ("[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided.").

Specifically, in the 2008 Action Initial Appeal, this Court rejected Winget's argument that the $50 million payment satisfied all of Winget's obligations, including his obligation to pay costs and expenses of collection. *Winget*, 602 F. App'x at 265-66. Because this issue was previously raised and resolved by this Court, this Court's prior ruling is the law of this case. *See Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case."). Since the district court could not depart from the law of this case, the district court properly rejected Winget's Rule 60(b)(5) motion as an improper attempt to relitigate issues that were already considered and decided. The analysis can stop here.

However, Winget's argument is also wrong on the merits. The plain language of Section 10 of the Guaranty explains how payments under the Guaranty should be applied by Chase, in its capacity as Administrative Agent, as between the *lenders* under the Credit Agreement. Section 10 also alerts Winget and the Trust that any payment made by them under the terms of the Guaranty will not reduce the amount owed in principal until the costs and interests associated with the principal debt are satisfied. Section 10 acts as a shield in favor of Chase by forcing Winget and the Trust to pay interest and Chase's out-of-pocket expenses before satisfying their underlying obligation, and by ensuring that interest continues to accrue until the last cent is paid. Section 10 does not, as Winget contends, act as a sword against Chase by requiring Chase to use the $50 million it received from Winget for pledged stock to also pay costs and expenses under Section 17. Winget is liable for *both* the underlying debt (under Section 3) and the costs and expenses Chase incurred in collecting on that debt (under Section 17). There is no language in

Section 10 that would limit Chase's right to receive cost and expenses, nor does Section 10 address how the Guarantors may satisfy their obligations under the Guaranty.

Further, Section 3 provides that Chase's recourse against Winget for the Guaranteed Obligations is limited to the stock listed in the pledge agreements associated with the Guaranty. **RE 487-1, Page ID #16718-19.** Section 3 only limits Chase's recourse against Winget for the guaranteed obligations to $50 million—the amount required to terminate the Pledges. In fact, Section 3 recognizes the distinction between payments made to terminate the Pledges and other costs arising out of the enforcement of the Guaranty in providing that, notwithstanding the limitations in Section 3, "the Guarantor shall be fully and personally liable for any damages arising from any violations of any of the agreements of the Guarantor herein." **RE 487-1, Page ID # 16718.** Again, Section 3 does not impact Winget's liability under the Guaranty, nor does it limit his distinct responsibility to pay the costs and expenses of Chase's collection and enforcement efforts. Thus, Winget is still liable for Chase's costs and expenses associated with collection of the Guaranteed Obligation. Therefore, the district court properly denied Winget's motion under Fed. R. Civ. P. 60(b)(5) in determining that there was no partial satisfaction of Chase's costs and expenses for collection and enforcement of the Guaranteed Obligations.

### C. The district court properly determined that the doctrine of res judicata did not bar Chase from recovering costs and expenses incurred in the 2005 and 2006 Actions.

Pursuant to the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). In Michigan, a claim is barred by res judicata if the following three elements are present:

> (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.

*Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755 (Mich. 2007); *See Estes v. Titus*, 751 N.W.2d 493, 499 (Mich. 2008).

The parties agree that the first two elements are present here. However, Winget and the Trust contend that the doctrine of res judicata should bar Chase from recovering costs and expenses incurred in the 2005 and 2006 Actions because Chase failed to bring those claims during those prior Actions. Winget and the Trust contend that by Chase's own admission, the 2005 and 2006 Actions were efforts to collect the Guaranteed Obligations, which were subject to rights under Section 17 of the Guaranty. It follows, the Defendants argue, that because rights to costs and expenses (like attorney's fees) are in the nature of damages under Michigan law, claim preclusion bars Chase's attempt to enforce such costs from the 2005 and 2006 Action. There are two reasons this argument fails. First, the procedural history suggests that Chase properly brought its motion for costs and expenses after Chase had been granted a final judgment regarding enforcement of the Guaranteed Obligations. In fact, Chase brought a claim to recover its expenses under Section 17 of the Guaranty during the 2005 Action (**RE 1, Page ID #11**), but the district court did not rule on that claim in the 2005 Action and instead instructed the parties, specifically Winget, to bring the remaining claims in a separate action (the 2006 Action). The district court then dismissed Winget's 2006 Action for failure to state a claim (**E.D. Mich. Case. No. 2:06-cv-13490, Judgement, RE 30, Page ID #1244**). Because the 2006 Action was dismissed before Chase was able to file an answer, Chase had neither the need nor the opportunity to assert a counterclaim for the recovery of costs and expenses of enforcement of the Guaranty. It was only after Chase succeeded in its efforts to secure rulings as to Winget and the Trust's liability under the Guaranty in the 2008 Action that Chase was in the appropriate position to pursue the costs and expenses of enforcement. Thus, from a procedural perspective, Chase

properly brought its motion for costs and expenses in the 2008 Action for all prior collection efforts.

Second, even if res judicata applied, the district court properly determined that Winget and the Trust contractually waived any res judicata defense in the Guaranty, and they are bound by that waiver. Courts frequently enforce waivers of defenses, including waivers of res judicata. *See Fourteen Corp. v. Magnoli*, No. 13-11803 2013 WL 4551705, at *6 (E.D. Mich. Aug. 28, 2013) (granting summary judgment after finding a guarantor's affirmative defenses barred by a contractual waiver of certain defenses, including res judicata); *LNV Corp. v. Savannah Dev., LLC*, No. 12-13562, 2014 WL 4978668, at *5–6 (E.D. Mich. Oct. 6, 2014) (barring assertion of equitable estoppel based on a contractual waiver); *Hartford Cas. Ins. Co. v. Comanche Constr., Inc.*, 103 F. Supp. 3d 900, 907 (W.D. Tenn. 2015) (holding that an agreement between parties constituted a waiver of res judicata when that agreement stated that nothing in the document would operate to prejudice a subsequent claim for declaratory relief).

Section 13 of the Guaranty provides in relevant part that "[n]o failure or delay by the Administrative Agent or any Lenders in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege." **RE 487-1, Page ID #16724.** The plain language of this provision indicates that Chase, as the Administrative Agent, can exercise a right under the Guaranty regardless of any perceived or real delay in exercising that right. Under the Guaranty, Chase has the right to the costs and expenses it incurred in collecting on the debt of the Guaranteed Obligations as governed by Section 17 of the Guaranty. Therefore, any alleged failure to exercise that right does not waive Chase's right to later collect under Section 17 of the Guaranty.

The language of Section 4 of the Guaranty further reinforces that the district court correctly determined that Defendants contractually waived any res judicata defense. Section 4 provides that Defendants' obligations under the Guaranty are "unconditional and absolute," and that they "shall not be released, discharged or otherwise affected by" any action or omission by Chase that might otherwise prevent enforcement of the obligations on any legal or equitable grounds. (***Id.* at Page ID #16719**) Winget and the Trust's argument that Chase had to exercise its rights under Section 17 in the 2005 and 2006 Actions or lose those rights plainly conflicts with several provisions of the Guaranty.

Winget and the Trust, however, contend that these kinds of contractual waivers to res judicata are against public policy and should not be enforced because they amount to simply "boilerplate" language. (Appellant's Br. at 23). However, all parties to this agreement were sophisticated negotiators and could have removed the "boilerplate" language for waivers that prohibit Winget and the Trust's res judicata defense. This Court will not automatically invalidate boilerplate language between sophisticated parties. *See Martin Cty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 600 (6th Cir. 2013) (Rogers, J. dissenting) (explaining that this Court has required a major disparity in bargaining power to invalidate a contractual provision). Thus, the terms of the contract must stand. Therefore, the district court did not err when it determined that the doctrine of res judicata does not bar Chase from recovering costs and expenses incurred in the 2005 and 2006 Actions.

## IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM**.