RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JPMORGAN CHASE BANK, N.A.,

　　　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

LARRY J. WINGET; LARRY J. WINGET LIVING TRUST,

　　　　　　　　　　　*Defendants-Appellants*.

No. 18-1143

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:08-cv-13845; 2:15-cv-13469—Avern Cohn, District Judge.

Argued: December 5, 2018

Decided and Filed: April 10, 2019

Before: DONALD, LARSEN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Thomas V. Hubbard, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellants. James W. Ducayet, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Thomas V. Hubbard, John E. Anding, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellants. James W. Ducayet, Kendra L. Stead, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. This appeal is not the first time we have seen Larry Winget and JPMorgan Chase. Nor will it likely be the last. Winget's appeal du jour follows the

district court's award of interim attorneys' fees to Chase. But because this order is not a "final decision" under 28 U.S.C. § 1291, we lack jurisdiction and therefore dismiss Winget's appeal.

## I.

We need not revisit each "chapter in [this] longstanding dispute between the parties." *JPMorgan Chase Bank, N.A. v. Winget*, 602 F. App'x 246, 248 (6th Cir. 2015) ("*Winget I*"). Suffice it to say, Chase sued Winget "to recover millions of dollars owed to it under a credit agreement between Chase and entities owned and operated by [Winget]." *JPMorgan Chase Bank, N.A. v. Winget*, 678 F. App'x 355, 356 (6th Cir. 2017) ("*Winget II*"). We decided the merits of the dispute and awarded Chase over $425 million. But there was a catch. While Winget's personal trust was on the hook for the full amount, Winget himself—protected by a limitation in his personal guaranty—owed Chase only $50 million (which he has since paid). *Winget I*, 602 F. App'x at 258–59.

The parties then litigated attorneys' fees—and whether Winget was personally liable for Chase's $12.6 million in fees and expenses. *JPMorgan Chase Bank, N.A. v. Winget*, 704 F. App'x 410, 413–14 (6th Cir. 2017) ("*Winget III*"). Chase won again. *Id.* at 414–16. And we explained in that appeal that despite Winget's limited personal guaranty, he "is still liable for Chase's costs and expenses associated with collection of the Guaranteed Obligation." *Id.* at 418. The district court then entered a final amended judgment against Winget and his trust. So one thing is clear: Winget and his personal trust owe Chase a lot of money.

But Chase's final judgment against Winget did not end this decade-long saga. Rather than use the trust's assets to pay Chase, Winget transferred the assets out of his trust and filed a new lawsuit—asking the district court to declare that Chase had no recourse against those assets. In response, Chase filed counterclaims against Winget, alleging that the transfers were fraudulent conveyances designed to avoid paying Chase. The district court consolidated the new lawsuit with the previous litigation, characterizing it as "the functional equivalent of post-judgment proceedings." (Order, R. 686 at 2.)

The parties are still engaged in these post-judgment proceedings. For example, Winget is fighting over what assets Chase can collect, how Chase can collect those assets, and what those

assets are worth.  And as these collection efforts drag on, Chase periodically asks the district court for more attorneys' fees.  The district court granted one such motion—awarding Chase another $2 million.  These fees covered Chase's expenses from June 2015 through November 2016.  But in doing so, the district court recognized the interim nature of the award, noting that "Chase's efforts to collect the Guaranteed Obligations are ongoing."  (Order, R. 773 at 1.)  These ongoing efforts include charging orders, depositions, requests for constructive trusts, writs of executions on stocks, continued discovery on the value of the assets in the trust, a potential trial to determine Chase's damages from Winget's fraudulent conveyances, and more requests for attorneys' fees.  In sum, Chase's collection efforts continue in the district court.

## II.

Winget now appeals the $2 million interim attorneys' fees award.  To start, however, we "must determine that [we] have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  We generally have jurisdiction only from "final decisions of the district courts."  28 U.S.C. § 1291.  A final decision "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 485 (6th Cir. 2005) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988)).  But this definition is not entirely helpful here.  As the Supreme Court explained, "a claim for attorney's fees is not part of the merits of the action to which the fees pertain." *Budinich*, 486 U.S. at 200.  In other words, an award of attorneys' fees cannot end the litigation on the merits.

So how then do we determine when a fee award is appealable?  In most cases, the timing of the award provides the answer.  For example, the district court can award attorneys' fees *before* it decides the merits of the case.  We know the answer in this situation; "orders awarding interim fees in the course of litigation are not appealable." *Webster v. Sowders*, 846 F.2d 1032, 1035 (6th Cir. 1988); *see also In re Diet Drugs Prods. Liab. Lit.*, 401 F.3d 143, 156 (3d Cir. 2005) (collecting cases) ("[A]n interim award of attorneys' fees is not, in almost all cases, an appealable final order because it foresees further and additional action by the district court, thus continuing, but not concluding, the fee litigation.").  And we would lack jurisdiction because the appeal would be too early.  Instead, the general rule would apply:  "a party is entitled to a single

appeal, to be deferred until final judgment has been entered." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

The district court can also award attorneys' fees at the same time it decides the merits of the case. Or it can give itself time to award attorneys' fees at substantially the same time. *Compare* Fed. R. Civ. P. 54(d)(2)(B)(i) (requiring a party to move for attorneys' fees "no later than 14 days after the entry of judgment"); *with id.* 58(e) (allowing the district court to extend the time for filing a notice of appeal to award fees if it "act[s] before a notice of appeal has been filed"), *and* Fed. R. App. P. 4(a)(4)(A)(iii) (explaining that the "time to file an appeal runs from the entry of . . . attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58"); *Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 607–10 (6th Cir. 2004) (explaining the complexity of these rules). Either way, the result is the same. When the district court resolves the merits of the case and the issue of fees *together*, the general rule applies: a party is entitled to a single appeal.

Still, the district court can award attorneys' fees *after* it decides the merits of the case. This scenario is a familiar one—courts routinely resolve attorneys' fees and costs post-judgment. *See* Fed. R. Civ. P. 58(e) ("Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees."); *see also, e.g.*, *White v. New Hampshire Dep't. of Emp't Sec.*, 455 U.S. 445, 453–54 (1982). But in this situation, the timing of the award is not as helpful. Although some post-judgment awards of attorneys' fees are immediately appealable, others are not. To solve this problem, our sister circuits employ a useful rule: "a postjudgment proceeding, for purposes of appeal, must be viewed as a separate lawsuit from the action which produced the underlying judgment." *In re Joint E. & So. Dists. Asbestos Litig.*, 22 F.3d 755, 760 (7th Cir. 1994); *see also In re Deepwater Horizon*, 793 F.3d 479, 490 (5th Cir. 2015) (dismissing appeal for lack of jurisdiction following a post-judgment discovery order); *Cent. States, Se. & Sw. Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir. 1992) (same); *Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745–46 (11th Cir. 1982) (same); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444,

1449 (9th Cir. 1991) (dismissing appeal for lack of jurisdiction following a post-judgment order granting a debtor examination).

This approach especially makes sense here, where the post-judgment proceedings, in large part, were prompted by a new lawsuit—albeit one the district court consolidated into the existing case. Thus, while "[a] postjudgment order might seem final by definition because the judgment is already behind it," we still do not have a "final decision" under § 1291 until the district court completes the post-judgment proceedings. *In re Asbestos Litig.*, 22 F.3d at 761 (quoting *Cent. States*, 971 F.2d at 6); Wright & Miller, Fed. Prac. & Proc. § 3916 (2d ed. 2018) ("Appeal ordinarily should not be available as to any particular post-judgment proceeding before the trial court has reached its final disposition. Once the district court has completely disposed of the matter, its decision should be found final.").

This rule is easily applied in most post-judgment cases. A district court typically resolves all attorneys' fees in a single, final order; completing the post-judgment proceedings. In this situation, we would have independent jurisdiction over an appeal from the final fee award (distinct from any previous appeal on the merits). *See Budinich*, 486 U.S. at 202; *Gnesys, Inc.*, 437 F.3d at 488. Indeed, this is the scenario we faced in *Winget III*. After we decided the merits of the dispute and the district court entered final judgment on remand, it awarded Chase attorneys' fees post-judgment. *Winget III*, 704 F. App'x at 414. These attorneys' fees covered Chase's expenses for the previous years of litigation. We affirmed these fees. And if Winget had used the trust's assets to pay the judgment and attorneys' fees, this case would be over.

But he did not—and so we now find ourselves in a different scenario. Winget appeals an *interim* award of attorneys' fees *post*-judgment, where the post-judgment proceedings are *ongoing*. In other words, this award of attorneys' fees did not end the post-judgment litigation. Thus, applying the post-judgment completeness rule, this appeal is not from a final, appealable order.

The Eleventh Circuit confirmed this rule and result—dealing specifically with a post-judgment fee award. *Mayer v. Wall Street Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (per curiam) (citing *Delaney's Inc. v. Illinois Union Ins. Co.*, 894 F.2d 1300, 1304 (11th

Cir. 1990)). The district court had competing post-judgment motions for attorneys' fees. After the district court denied one motion—but before the court decided the other motion—the plaintiff appealed the decision. The Eleventh Circuit treated the post-judgment proceedings as a separate and "free-standing" lawsuit—and dismissed the appeal for lack of jurisdiction because the post-judgment litigation was ongoing—*i.e.*, "the other fee motion . . . remain[ed] outstanding." *Id.* The Eleventh Circuit explained when the parties should appeal in this situation: "Only if a postjudgment order is 'apparently the last order to be entered in the action' is it final and appealable." *Id.* (quoting *Delaney's Inc.*, 894 F.2d at 1304 (quoting 9 Moore's Fed. Prac. ¶ 100.14[1], 196–97 (2d ed. 1988))). This rule makes sense, "to hold otherwise invites litigants to appeal every attorney's fees order, even if other requests remain outstanding, resulting in a proliferation of piecemeal or repetitious appeals." *Id.*

This is the situation we face here. The district court has not completed the post-judgment litigation. The parties are still fighting over what assets Chase can collect, how Chase can collect those assets, and what those assets are worth. *See supra* p. 3. And Chase continues to incur attorneys' fees in these collection efforts. Indeed, both parties admit that the post-judgment litigation is not final. According to Winget, the $2 million fee award is "premature" because "there is no final judgment."[1] (Winget's Reply Br. at 4; Winget Supp. Br. at 3.) And while Chase prefers to confirm its fees sooner rather than later (arguing that we have jurisdiction), Chase still described its motion for fees as "interim in nature" and that it "will from time to time return to this Court to seek further orders for the recovery of costs and expenses." (Mot. for Costs, R. 709 at 4; *see also* Chase's Br. at 14 (explaining that Chase is still "endeavoring to collect" and has not "finally prevailed in its second collection action").) This is exactly what Chase did in October 2018—filing another motion for attorneys' fees. (Mot. for Costs, R. 862

---

[1]Winget's main argument is that the district court mistakenly considered the 2015 litigation as part of the 2008 litigation. But this distinction does not matter. Whether we consider the ongoing litigation as "post-judgment" collection efforts—or instead, a separate lawsuit—Winget concedes that "there is no final judgment in the 2015 Action." (*See* Winget Supp. Br. at 3.) Essentially, Winget wants to eat his cake and have it, too. Winget wants us to have jurisdiction to reverse the fee award—but he wants us to reverse the fee award because there is no final judgment. But if the 2015 litigation is a separate lawsuit, then the general rule applies and "orders awarding interim fees in the course of litigation are not appealable." *Webster*, 846 F.2d at 1035; *see also* Wright & Miller, Fed. Prac. & Proc. § 3915.6 (2d ed. 2018) ("Ordinarily[,] [an] appeal is not allowed from an order granting an interim award [of fees], even if it is immediately enforceable.").

at 1 (asking for fees from December 2016 through June 2018).)   The district court has not resolved this latest motion.

In sum, it is undisputed that this award for attorneys' fees is not the last order to be entered in the action.  Instead, there is plenty left for the district court to resolve.  Thus, viewing Chase's post-judgment collection efforts as separate and ongoing litigation, the interim award of attorneys' fees is not a final, appealable decision under 28 U.S.C. § 1291.

## III.

There are, of course, exceptions to 28 U.S.C. § 1291, such as the "collateral order" doctrine.  *See Webster*, 846 F.2d at 1035.  "[T]he collateral order doctrine accommodates a 'small class' of rulings" that do not end the litigation—but which we still consider "final."  *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). The Supreme Court has refused to expand this "small class" of cases—choosing instead to keep "it narrow and selective in its membership."  *Id.* at 350.  This "small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc.*, 558 U.S. at 106 (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)).

Chase argues that this case fits within one of these narrow exceptions:  post-judgment monitoring cases.  In these "monitoring" cases, our sister circuits have allowed parties to appeal interim awards of attorneys' fees.  But these cases are unique.  They typically stem from consent decrees between parties—agreeing that long open-ended monitoring is needed to cure constitutional violations.  For example, in one of the cases Chase relies on, *Balla v. Idaho*, there was a "twenty-year-old injunction" in place to fix constitutional violations in prisons.  677 F.3d 910, 912 (9th Cir. 2012); *see also Madrid v. Gomez*, 190 F.3d 990, 994 n.4 (9th Cir. 1990) (finding that it had jurisdiction to review "[a] periodic fee award made during the remedial phase of a prisoner civil-rights" matter in a similar long-term monitoring case).

This reveals the key commonality in the monitoring cases that is missing here—the inability to obtain post-judgment finality.  *See Gates v. Rowland*, 39 F.3d 1439, 1450 (9th Cir.

1994) ("The compliance period has not been limited to a definite time frame."). Because monitoring cases can go on indefinitely, a party can immediately appeal an interim fee award; otherwise, in some circumstances, the parties could never appeal. *See Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 654 (7th Cir. 2007) ("Another reason for allowing an immediate appeal is that a decree might never *be* dissolved, so that to treat fee awards as interlocutory might defer appeal to the end of time.") (citation omitted); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 702 (3d Cir. 2005) ("We are persuaded by this logic [in *Gates*]. In a complex environmental [clean-up], monitoring will likely continue well into the future . . . for years if not decades."); *Walker v. U.S. Dep't. of HUD*, 99 F.3d 761, 766 (5th Cir. 1996) ("[C]onsidering the ongoing and possibly permanent nature of monitoring and preventing further changes to the City Consent Decree, it is unlikely that there ever will be a 'final judgment' for this court to review.").

We have recognized this same commonality. *Webster*, 846 F.2d at 1035. In *Webster*, we had jurisdiction to resolve an appeal from an interim fee award. But unlike typical interim fee awards, the district court "imposed . . . a *prospective* burden of large monthly fee payments with no definite cutoff date," and it was undisputed that "repayment in the event of appellate reversal could not be assured." *Rosenfeld v. United States*, 859 F.2d 717, 721 (9th Cir. 1988) (distinguishing *Webster*); *see also Cobell v. Jewell*, 802 F.3d 12, 22 (D.C. Cir. 2015) ("The post-settlement fees and costs . . . could continue indefinitely[.]").

But here, despite the long litigation between the parties, Chase's collection efforts will have an end date. The district court will eventually enter a final amended judgment, resolving which assets Chase can collect from, and calculating Chase's total attorneys' fees. *See, e.g.*, *Cent. States,* 971 F.2d at 6 ("A contested collection proceeding [unlike monitoring cases] will end in a judgment or a series of judgments granting supplementary relief to the plaintiff."). And neither Winget nor Chase suggest that irreparable harm would result if we defer review of this interim award until the district court completes the rest of the post-judgment litigation.

As a result, the $2 million interim attorneys' fee award is not a "final decision." And because our jurisdiction is limited to "final decisions of the district courts," 28 U.S.C. § 1291, we lack jurisdiction to decide whether the district court correctly awarded Chase additional fees. We dismiss the appeal without addressing the merits. *See Firestone Tire & Rubber Co. v.*

*Risjord*, 449 U.S. 368, 379 (1981) ("If the appellate court finds that the order from which a party seeks to appeal does not fall within [its appellate jurisdiction], its inquiry is over.").